# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ROSEN MARIANO, | Case No.: 2:18-cv-01911-APG-EJY |
| Plaintiff | **Order (1) Granting in Part Motion for Summary Judgment and (2) Reopening Discovery** |
| v. | |
| CITY OF LAS VEGAS; CORRECTIONAL HEALTHCARE COMPANIES, INC.; CORRECT CARE SOLUTIONS, LLC; and MICHELE FREEMAN, | [ECF No. 51] |
| Defendants | |

Plaintiff Rosen Mariano was incarcerated at the City of Las Vegas Detention Facility when he suffered a stroke. He contends the defendants failed to timely transport him to a hospital, resulting in him not receiving treatment that could have abated the stroke's impact on his health. He asserts claims under 42 U.S.C. § 1983 for deliberate indifference to a serious medical need under the Eighth Amendment against defendants City of Las Vegas (City); Michele Freeman, who is the chief of the Las Vegas Department of Public Safety responsible for overseeing the detention facility; and Correct Care Solutions, LLC (CCS),[1] which is a private company that contracted with the City to provide medical care at the detention facility. He also asserts a state law claim for negligent hiring, training, and supervision against CCS.[2]

---

[1] At the August 19, 2021 hearing, CCS's counsel indicated that CCS has changed its name to Wellpath. If the case caption needs correction, the parties should file a stipulation to that effect.

[2] Mariano stipulated to dismiss Correctional Healthcare Companies, Inc. ECF No. 13. Mariano also asserted an Eighth Amendment deliberate indifference claim against unidentified correctional officers and healthcare workers, but he never amended his complaint to add them as parties. Consequently, the remaining defendants are City, Freeman, and CCS.

CCS moves for summary judgment, and City and Freeman join the motion.  CCS argues that Mariano's § 1983 claim fails because he has not provided evidence of a policy or custom to support liability against CCS.  CCS also contends that even if Mariano could identify some policy or custom, the evidence shows at best negligent misdiagnosis, not deliberate indifference. CCS argues that the negligent hiring, training, and supervision claim fails because it is a medical malpractice claim and Mariano did not obtain an affidavit of merit as required under Nevada law. Finally, CCS moves for partial summary judgment on damages.

Mariano responds that the basis of his claims is not that he was misdiagnosed by the nurses who saw him.  Rather, he contends that no one with sufficient medical training to diagnose him saw him until he was finally seen by an advanced practice registered nurse (APRN) who sent him to the hospital.  Mariano contends CCS had multiple policies, or that it lacked needed policies, in deliberate indifference to his needs, including having initial exams done by a charge nurse instead of an APRN or doctor, having no protocol for handling medical kites, and allowing only the doctor or an APRN to send an inmate to the hospital.[3]  Mariano also contends that CCS has a custom or practice of not sending an inmate to the hospital unless absolutely necessary because CCS is a for-profit enterprise.

As to the negligent hiring, supervision, and training claim, Mariano argues that he does not need an affidavit because he contends that despite him slurring his words and reporting that he was dizzy and experiencing numbness, the nurses ignored him.  He contends that even if the nurses' responses are subject to medical judgment, the need to send him to the hospital was

---

[3] At the hearing on the motion, Mariano's counsel characterized one of the relevant policies as nurses not being authorized to send an inmate to the hospital unless the inmate was unconscious or not breathing.

obvious, so no affidavit was required.  Finally, he concedes a portion of CCS's motion regarding damages, but disputes the remainder.

The parties are familiar with the facts, so I repeat them here only where necessary to resolve the motion.  I deny CCS's motion on the § 1983 deliberate indifference claim because the manner in which discovery unfolded left significant gaps in the evidence that make resolving this case at summary judgment or proceeding to trial unworkable.  I therefore reopen discovery on the defendants' policies.  But I grant summary judgment in favor of CCS on the negligent hiring, training, and supervision claim and on three categories of damages.

## I.  LEGAL STANDARD

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial.").  I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

## II.  SECTION 1983

"To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012) (quotation omitted).  The defendants do not dispute that they acted under color of state law, so the only issue is whether the defendants deprived Mariano of his Eighth Amendment rights.

"The government has an obligation to provide medical care for those whom it is punishing by incarceration and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quotation omitted).  To establish an Eighth Amendment violation based on inadequate medical care, "a plaintiff must show deliberate indifference to his serious medical needs."[4] *Id.* (quotation omitted).

A municipality may be held liable under § 1983 "only when the municipality inflicts an injury." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002) (citing *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)), *overruled on other grounds by Castro v. Cnty. of L.A.*, 833 F.3d 1060 (9th Cir. 2016) (en banc).  There are two ways a plaintiff can show the municipality inflicted the injury.  "First, a plaintiff can show that a municipality itself violated someone's rights or that it directed its employee to do so." *Id.*  For example, a municipality may be liable if its policy discriminates against pregnant women in violation of the Fourteenth Amendment. *Id.* at 1185.  Under this test, the plaintiff must show (1) a municipal policy or custom, (2) "a direct causal link between [that] policy or custom and the alleged

---

[4] There is no dispute Mariano had a serious medical need because he suffered a stroke.

constitutional deprivation," and (3) that the policy or custom "was adhered to with deliberate indifference to the constitutional rights of [the jail's] inhabitants." *Castro*, 833 F.3d at 1075-76 (quotations omitted).  Under this route, a municipality can be liable even if no single employee is responsible for a constitutional violation. *See Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 604-05 (9th Cir. 2019) (stating that a municipal defendant "may be liable under § 1983 even in situations in which no individual officer is held liable for violating a plaintiff's constitutional rights" where the constitutional deprivation occurs "not . . . as a result of actions of the individual officers, but as a result of the collective inaction of the municipal defendant" (quotation omitted)).

Under a second route to municipal liability, a plaintiff can show that "through its omissions the municipality is responsible for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation." *Gibson*, 290 F.3d at 1186 (emphasis omitted).  Under this theory of liability, the plaintiff "must show that the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional violation." *Id.*  To prove deliberate indifference, "the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." *Id.*

Under either route, an official municipal policy "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Tsao*, 698 F.3d at 1144 (quotation omitted).  A plaintiff may show a "policy of inaction or omission," such as a "failure to implement procedural safeguards to

prevent constitutional violations." *Id.* at 1143.  Where the plaintiff's claim is based on a policy of inaction, causation is shown through proof that the municipality "could have prevented the violation with an appropriate policy." *Id.* (quotation omitted).  And the municipality acts with deliberate indifference if it was "on actual or constructive notice that its omission would likely result in a constitutional violation" such that the omission "reflects a deliberate or conscious choice to countenance the possibility of a constitutional violation." *Id.* at 1145 (quotations omitted).

"Deliberate indifference exists when the need for more or different action is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Hyun Ju Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020) (quotation omitted).  This can be shown through evidence of a policy that is "so facially deficient that any reasonable policymaker would recognize the need to take action." *Id.* "Alternatively, if the policy is not obviously, facially deficient, a plaintiff must ordinarily point to a pattern of prior, similar violations of federally protected rights, of which the relevant policymakers had actual or constructive notice." *Id.* at 1142.

Resolution of CCS's motion is complicated by the manner in which the parties conducted discovery in this case.  CCS did not produce any of its policies as part of its initial disclosures under Federal Rule of Civil Procedure 26(a) or at any other time during discovery.  CCS contends it did not do so because it has no intention of relying on its policies to defend itself. But that assertion rings hollow given that when Mariano argued that CCS lacked a medical kite policy, CCS attempted to present evidence that in fact it had one. *See* ECF Nos. 63 at 14; 63-1. Additionally, CCS represented at the August 19, 2021 hearing that it intends to have witnesses

testify about CCS's policies, thus suggesting that CCS intends to rely on its policies to defend itself in this case.  CCS thus should have produced its policies as part of its Rule 26(a) disclosures.  Although Mariano could have requested the policies in discovery, he apparently chose to instead question CCS employees about policies and to argue that CCS lacked important policies.  But Mariano's "failure to conduct discovery does not excuse [CCS's] failure to make complete initial disclosure." *McGowan v. Credit Mgmt. LP*, No. 2:14-cv-00759-APG-VCF, 2015 WL 1886706, at *4 (D. Nev. Apr. 23, 2015).

As explored at the hearing, this course of events leaves the record undeveloped in ways that make resolving this case at summary judgment or proceeding to trial unworkable.  And while I could issue exclusionary sanctions under Federal Rule of Civil Procedure 37, it appears a lesser sanction of reopening discovery is more productive to having this case resolved on the merits where material facts have not been sufficiently fleshed out.  I therefore will require the defendants to produce their relevant policies under Rule 26(a) and reopen discovery on the limited area of the defendants' policies (or lack thereof), to include documents, percipient witnesses, and experts. *See* Fed. R. Civ. P. 56(e).  The parties shall confer on a proposed discovery plan and present it to the Magistrate Judge for approval.  Consequently, I deny CCS's motion for summary judgment on the § 1983 claim without prejudice to refiling it after the close of this additional discovery period.

**B.  Negligent Hiring, Training, and Supervision**

CCS argues that this claim must be dismissed because it is one for medical malpractice and Mariano did not provide an affidavit as required by Nevada Revised Statutes (NRS) § 41A.071.  CCS contends that a lay jury will not be able to evaluate the nurses' and doctor's

conduct without the assistance of experts because diagnosis of posterior strokes is notoriously difficult and Mariano's symptoms had other possible causes.

Mariano responds that he is not alleging that the nurses misdiagnosed him. Rather, he contends the nurses were negligent because they ignored his repeated requests for medical attention and his description of his symptoms of slurred speech, numbness in his arm, and difficulty moving his leg. Alternatively, he contends that his symptoms were so obviously related to a stroke that no affidavit is required.

NRS § 41A.071 provides that a plaintiff's medical malpractice complaint must be dismissed if it is not accompanied by an expert affidavit. As relevant here, an affidavit is not required where "the reasonableness of the health care provider's actions can be evaluated by jurors on the basis of their common knowledge and experience." *Est. of Curtis v. S. Las Vegas Med. Invs., LLC*, 466 P.3d 1263, 1267 (Nev. 2020) (quotation omitted). This exception is "narrow," and "applies only to situations involving negligence that is apparent without any expert testimony." *Id.* (emphasis omitted). For example, this exception applied in *Curtis* where the nurse administered the wrong drug because she had mixed up two prescriptions. *Id.* at 1269. But this exception "does not apply to situations where the professional exercises medical judgment." *Id*. at 1268.

Taking as true Mariano's testimony that he repeatedly told the nurses of his symptoms and they did not refer him to a doctor or the hospital, determining how the nurses should have responded requires an evaluation of professional medical judgment. Mariano's own expert testified that the nurses responded to him, but they negligently failed to send him to the hospital immediately based on his symptoms. ECF No. 63-2 at 3. And the expert acknowledged that at least some of Mariano's symptoms were explainable by other causes. *Id.* at 10, 13, 18; *see also* at

1    *id.* at 85 (CCS's expert report by Christopher O'Carroll, M.D., stating that diagnosis of a

2    posterior circulation stroke is difficult even for a stroke expert and that the diagnosis of

3    orthostatic hypotension was not unreasonable because Mariano was on anti-hypertensive

4    medicine).  Thus, evaluating whether the nurses and doctor properly responded to Mariano

5    cannot be evaluated based on jurors' common knowledge and experience and would require

6    expert testimony.  If the nurses were not negligent or their negligence did not cause Mariano's

7    injuries, then CCS cannot be liable in this case for its alleged negligent hiring, training, and

8    supervision of them.

9       Mariano's complaint therefore was required to be accompanied by an expert affidavit.

10    Because it was not, I dismiss his negligent hiring, training, and supervision claim.

11    **C. Damages**

12       CCS contends it is entitled to partial summary judgment on Mariano's claimed damages

13    from Mountain View Hospital and University Medical Center (UMC) because no expert has

14    opined that the treatment he received at these facilities was caused by the delay in receiving

15    treatment.  Rather, CCS asserts, he required treatment at UMC because of the stroke itself and he

16    later reported to Mountain View Hospital after falling while intoxicated, not because of the

17    stroke.  CCS also contends that Mariano should not be able to request damages for a vocational

18    rehabilitation expert because he testified that he has no intention of returning to the work force.

19       Mariano concedes that the UMC bill should not be included in his damages, but he argues

20    that a genuine dispute remains regarding whether the fall preceding the Mountain View Hospital

21    visit was due to intoxication or his bad left leg that was caused by the stroke.  He also asserts he

22    should be able to seek damages for a vocational counselor in case he decides to return to the

23    workforce someday.

I grant CCS's motion as to the UMC bill because Mariano concedes that he incurred that bill because he was experiencing a stroke and would have had to go to the hospital regardless of when CCS decided to send him there.  I grant CCS's motion as to the Mountain View Hospital bill because Mariano has not pointed to evidence from which a reasonable jury could find that the fall was the result of weakness in his left leg rather than his intoxication. *See* ECF No. 58-5 at 22 (Mariano testifying that he fell after taking methamphetamine).  His unsupported argument that his weakened left leg is a "more plausible explanation for his fall" does not raise a genuine dispute. ECF No. 58 at 27.  Finally, I grant CCS's motion with respect to the vocational counselor.  Mariano testified that he does not intend to return to the workforce. *Id.* at 5 (Mariano testifying that he has no plans to seek future employment and that he plans to live off disability and military benefits for the rest of his life).  Unsupported speculation that Mariano may one day change his mind does not suffice to raise a genuine dispute for trial.

## III.  CONCLUSION

I THEREFORE ORDER that defendant Correct Care Solutions, LLC's motion for summary judgment **(ECF No. 51) is GRANTED in part**.  The motion is granted as to plaintiff Rosen Mariano's claim for negligent hiring, training, and supervision.  The motion is also granted as to damages for the UMC and Mountain View hospital bills and the vocational counselor.  The motion is denied without prejudice as to the Eighth Amendment deliberate indifference claim under 42 U.S.C. § 1983.

I FURTHER ORDER that discovery is reopened, limited to the defendants' relevant polices (or lack thereof), to include documents, percipient witnesses, and experts. *See* Fed. R. Civ. P. 56(e).  The defendants shall produce their relevant policies under Federal Rule of Civil

/ / / /

Procedure 26(a).  The parties are to confer and propose a discovery plan and scheduling order to the Magistrate Judge by September 17, 2021.

DATED this 20th day of August, 2021.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE